UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOE HAND PROMOTIONS, INC.,

   Plaintiff,

v.                                                                       Case No: 8:19-cv-650-T-36AAS

OSCAR E. GUEVARA, II and LATIN
BAY ENTERTAINMENT LLC,

   Defendants.
_____/

## **ORDER**

This matter comes before the Court upon Plaintiff's Motion for Default Judgment (Doc. 25). The motion seeks entry of a default judgment against Oscar E. Guevara.[1] *Id.* Guevara has not responded to the motion and the time to do so has elapsed. The Court, having considered the motion and being fully advised in the premises, will grant the motion.

### I.  BACKGROUND AND FACTS

####   A.  **Procedural Background**

Plaintiff Joe Hand Promotions Inc. ("Plaintiff") filed a Complaint against Oscar E. Guevara, II ("Guevara") and Latin Bay Entertainment LLC d/b/a Juan Pachanga Nightclub ("Latin Bay"). Doc. 1. Plaintiff has since dismissed Latin Bay as a defendant to this action. Docs. 27-28.

The Summons and Complaint were served on May 15, 2019 to Guevara's usual place of abode and left with his son, Jose Guevara, a person aged 15 years or older who resides in the home

---

[1] At the time the motion was filed, Latin Bay Entertainment LLC remained a Defendant in this litigation and the motion also seeks judgment against Latin Bay Entertainment LLC. Doc. 25. Plaintiff has since dismissed Latin Bay Entertainment LLC as a Defendant in this action, and the Court entered an Order dismissing Latin Bay Entertainment LLC. Docs. 27-28. Accordingly, to the extent the motion seeks entry of default judgment against Latin Bay Entertainment LLC, the motion is denied as moot.

and who confirmed that Guevara resides in the home. Doc. 17. Although Guevara filed an Answer solely on behalf of Latin Bay, that Answer has since been stricken because no evidence showed that Guevara was an attorney authorized to represent Latin Bay. Docs. 18-21. Guevara has not, otherwise, appeared in this action or responded to the Complaint in any way. Accordingly, Plaintiff filed a motion requesting a clerk's default be entered against Guevara, which was granted. Docs. 22-23. Plaintiff now moves for entry of a default judgment against Guevara. Doc. 25.

### B.  Factual Background

Plaintiff was granted the exclusive right to commercially distribute the audiovisual presentation of the *Floyd Mayweather Jr. vs. Conor McGregor* boxing match, including all undercard bouts and commentary, on Saturday, August 26, 2017 (the "Program"). Doc. 1 ¶ 5. Plaintiff obtained this right from the owner of the registered copyright of the Program, who entered into a written agreement with Plaintiff that assigned ownership of the right to distribute and authorize the public performance of the Program. *Id.* ¶ 6.

There was wide interest in the Program, which was reported by Reuters to be the most anticipated Pay-Per-View event in history. *Id.* ¶ 10. Plaintiff licensed the Program to over 6,000 establishments and charged a licensing fee that was determined by the capacity of the establishment. *Id.* For an establishment with the capacity of 100 people or fewer, the licensing fee was $3,700. Doc. 25-7 at 1.

Guevara is an officer, director, shareholder, member or principal of Latin Bay, which operated a night club. *Id.* ¶¶ 7-8. Guevara had the right and ability to supervise the activities of the night club and also had a financial interest in the night club's activities. *Id.* ¶ 9.

The night club obtained the Program without paying the proper commercial license fees to Plaintiff. *Id.* ¶¶ 12, 16; *see also* Doc. 25-2 ¶ 11. This could be done in four ways: "(1) intercepting

and redirecting cable or satellite service from a nearby residence, (2) registering the[] business location as a residence, (3) physically moving a cable or satellite receiver from a residence to the[] business, and/or (4) obtaining the Program in violation of the terms of the[] television service provider agreement." Doc. 1 ¶ 12. Alternatively, the Program was available for $99.99 for non-commercial use and certain establishments purchased this viewing option but used it commercially. *Id.* ¶ 13. Guevara obtained the Program in one of the above-listed ways, knowing that use of the Program at the night club was not authorized. *Id.* ¶ 14. Guevara did so intentionally for economic gain to attract customers. *Id.* ¶ 15.

Plaintiff retained auditors and law enforcement personnel to detect and identify signal pirates. Doc. 25-2 ¶ 6. One such auditor is Phong T. Chau, who observed the unauthorized exhibition of the Program at the nightclub. *Id.* ¶ 14; *see also* Doc. 25-6. Chau observed the Program on one television while the nightclub was occupied by approximately thirty-three patrons. Doc. 25-2 ¶ 14; Doc. 25-6 at 2. Chau estimated the maximum capacity of the nightclub to be sixty people. Doc. 25-6 at 2. Plaintiff also learned that the nightclub advertised on Facebook that the Program would be broadcast at the nightclub, presumably to increase the number of patrons and revenue. Doc. 25-2 ¶ 15; *see also* Doc. 25-3.

Plaintiff filed a Complaint alleging one count of satellite and cable piracy in violation of 47 U.S.C. §§ 553 and 605, and a second count of copyright infringement in violation of 17 U.S.C. §§ 106 and 501. *Id.* ¶¶ 18-25. Plaintiff elected to move for judgment solely with respect to the claim for piracy, and not as to the copyright infringement claim. Doc. 25-1 at 5 n.1. Additionally, Plaintiff elected to pursue its piracy claim against Guevara under § 605 in lieu of § 553. *Id.* at 5.

## II. LEGAL STANDARD

A default judgment may be entered when "the party against whom a judgment . . . is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." *Thomas v. Bank of Am., N.A.*, 557 Fed. Appx. 873, 875 (11th Cir. 2014) (quoting Fed. R. Civ. P. 55 (a)). Allegations in a well-pleaded complaint are established as fact on entry of a default judgment, as long as there is a stated claim that allows for relief and jurisdiction is established. *See GMAC Commercial Mortg. Corp. v. Maitland Hotel Assocs.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002). A well-pleaded complaint contains more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Brito v. 4018 W. Vine St. LLLP,* No. 618CV177ORL41TBS, 2018 WL 3370672, at *1 (M.D. Fla. May 30, 2018), *report and recommendation adopted*, No. 618CV177ORL41TBS, 2018 WL 3361809 (M.D. Fla. July 10, 2018) (noting the distinction between conclusory allegations and well-pleaded facts). There must be sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face. *Id.* (quoting *Twombly*, 550 U.S. at 570).

## III. DISCUSSION

### A. Clerk's Default

Federal Rule of Civil Procedure 55(a) provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b). *DirectTV, Inc. v. Griffin*, 290 F. Supp. 2d 1340, 1343 (M.D. Fla. 2003).

Service on Guevara was proper. Section 48.031(1)(a), Fla. Stat. ("Service of original process is made . . . by leaving the copies at his or her usual place of abode with any person residing therein who is 15 years of age or older . . . ."); Fed. R. Civ. P. 4(e) (stating that a person may be served by "following state law for serving a summons . . . ."). Guevara nonetheless failed to appear in this action and the Clerk entered a default against him. Fed. R. Civ. P. 55(a); Doc. 23.

B.   Liability

The Communications Act of 1934 provides that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). It also permits a private right of action against parties that violate § 605(a) and awards aggrieved parties statutory damages, attorneys' fees, and costs. 47 U.S.C. § 605(e)(3)(B)(i), (ii) ("The court . . . may award damages described in [47 U.S.C. § 605(e)(3)](C) [,] ... full costs, including reasonable attorneys' fees."). To establish a violation of § 605, a plaintiff must show that "(1) Defendant[ ] intercepted the transmission of the boxing match; (2) Defendant[ ] did not pay for the right to receive the transmission; and (3) Defendant[ ] displayed the boxing match to the patrons of [his] commercial establishment." *Joe Hand Promotions, Inc. v. Prevot*, No. 8:19-cv-651-T-24SPF, 2019 WL 4694530, at *2 (M.D. Fla. Sept. 26, 2019) (citing *Joe Hand Promotions, Inc. v. Martinez*, 2019 WL 3082582, at *3 (N.D. Ala. July 15, 2019)).

Additionally, to recover against a person in his or her individual capacity based on vicarious liability, as Plaintiff seeks to do, the plaintiff must show that the individual "had the 'right and ability to supervise the violations, and that he had a strong financial interest in such activities.' " *J & J Sports Productions, Inc. v. Mega Taco, Inc.*, 1:17-CV-1863-RWS, 2018 WL 2760318, at *4 (N.D. Ga. Apr. 5, 2018) (quoting *Joe Hand Promotions, Inc. v. McBroom*, No. 5:09-CV-276(CAR), 2009 WL 5031580, at *4 (M.D. Ga. Dec. 15, 2009)).

In the Complaint, Plaintiff alleges that the nightclub intercepted the transmission for the Program by either purchasing a non-commercial use license, using a residence's signal instead of one for commercial use, or violating the terms of his television service provider agreement. Doc. 1 ¶¶ 12–14. Plaintiff also alleges that the nightclub broadcast the Program, without a proper license, at the nightclub in order to attract customers and benefit financially. *Id.* ¶¶ 15–16. Additionally, Plaintiff alleges that Guevara had the right and ability to supervise the activities of the nightclub, as well as a direct financial interest in the activities of the nightclub. Doc. 1 ¶ 9. Plaintiff supports this assertion with evidence that Guevara is the manager of the nightclub. Doc. 25-5. Further, Plaintiff alleges in the Complaint that, at the relevant time, Guevara "was an officer, director, shareholder, member or principal of the entity owning and operating the" nightclub. Doc. 1 ¶ 8. Therefore, Plaintiff alleges enough facts to demonstrate Guevara's liability for a willful violation of § 605.

    **C.**    **Damages**

        **1.**    **Statutory Damages**

A plaintiff who establishes violation of § 605(a) may recover between $1,000 and $10,000 in statutory damages for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). In the event that the defendant willfully violated the provision, then a court may award up to $100,000 in enhanced

statutory damages. 47 U.S.C. § 605(e)(3)(C)(ii). In determining the amount of statutory damages, the Court considers:

> (1) whether the defendant profited as a result of his violation; (2) whether the defendant assisted or induced others in violating the statute; (3) whether the defendant's violation was willful or flagrant; (4) whether the damage award will be sufficient to deter similar conduct; and (5) whether the damage award is comparable to awards in similar cases.

*Kingvision Pay-Per-View Corp. v. El Torito Supermarket, Inc.*, No. 6:06-cv-657-Orl-18KRS, 2007 WL 1794158, at *4 (M.D. Fla. June 19, 2007) (quoting *DirectTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1131 (M.D.Ala.2004)).

"The Court must strike a balance between deterring other incidents of piracy by the[ ] [d]efendants and others, and not making the award such that it will put a small business out of business." *J & J Sports Prods., Inc. v. Arboleda*, No. 6:09-cv-467-Orl-18DAB, 2009 WL 3490859, at *7 (M.D. Fla. Oct. 27, 2009). It is common practice in the Middle District of Florida to award enhanced statutory damages equal to three times the statutory damages amount. *See e.g. Kingvision Pay-Per-View Corp., LTD. v. Wright*, No. 8:06-cv-892-T-30MAP, 2006 WL 4756450, at *3 n. 8 (M.D. Fla. Oct. 27, 2006) (awarding an enhanced statutory damages amount that is three times the actual damage); *J & J Sports Prods., Inc. v. Arboleda*, No. 6:09-cv-467-Orl-18DAB, 2009 WL 3490859, at *7 (M.D. Fla. Oct. 27, 2009) (awarding enhanced statutory damages of three times the statutory damages amount where the defendant did not charge a cover fee or was a repeat offender); *Prevot*, 2019 WL 4694530, at *3 (awarding enhanced damages that represent three times the statutory damages amount).

Here, Plaintiff argues that the Court should award $5,000 in statutory damages and $15,000 in enhanced statutory damages because the violation was willful. Doc. 25-1 at 8-11. The statutory damages represent the unpaid $3,700 sublicense fee and $1,300 in profits gained by Guevara from

the unauthorized broadcast, while the enhanced statutory damages reflect three times the statutory damages amount. *Id.* However, no evidence supports Plaintiff's assertion that Guevara earned $1,300 in profits. Plaintiff argues that this number is based on a per person cover charge at the nightclub, but the nightclub's Facebook page indicated no cover would be charged. Doc. 25-3. Chau's affidavit also states that he was not charged a cover when he entered the nightclub. Doc. 25-6 at 1. Even if there had been a $10.00 cover charge, Chau observed a maximum of thirty-three people in the nightclub, which would result in $330.00 in profits from the cover charge. At the estimated full capacity, the profits would be $600.00.

Plaintiff does provide evidence, however, of the licensing fee of $3,700.00. Doc. 25-7. Accordingly, the Court will award damages in this amount. *Joe Hand Promotions, Inc. v. Mortimer*, 619CV516ORL37EJK, 2020 WL 2366738, at *4 (M.D. Fla. Apr. 24, 2020), *report and recommendation adopted*, 619CV516ORL37EJK, 2020 WL 2330233 (M.D. Fla. May 11, 2020) (awarding $3,700.00 for the licensing fee where the plaintiff did not support assertions regarding profits earned while showing the program). Additionally, the Court will award additional enhanced damages of $11,100, representing three times the damages amount, because Guevara's violation was willful. *Arboleda*, 2009 WL 3490859, at *6 (stating that courts award damages on a per-patron basis for the maximum the bar allows, or as a multiple of the licensing fee charged for commercial operation).

### 2.     Attorneys' Fees and Costs

Under 47 U.S.C. § 605(e)(3)(B)(iii), "[t]he court . . . shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." To calculate a reasonable award of attorney's fees, courts multiply the reasonable hourly rate by the reasonable hours expended. *See Hensley v. Eckerhart*, 461 U.S. 424, 433-34, 103 S. Ct. 1933, 76 L. Ed. 2d

40 (1983); *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). In determining the lodestar figure, a "reasonable hourly rate" consists of "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. In this context, "market rate" means the hourly rate charged in the local legal market by an attorney with expertise in the area of law who is willing and able to take the case, if indeed such an attorney exists. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). The fee applicant bears the burden of establishing the requested rates are in line with the prevailing market rates by producing direct evidence of rates charged in similar circumstances or opinion evidence of reasonable rates. *Norman*, 836 F.2d at 1299. At a minimum, satisfactory evidence consists of more than the affidavit of the attorney performing the work; instead, "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." *Id.*

Plaintiff's counsel submitted an affidavit stating that his billable hourly rate for anti-piracy litigation is $250.00 and he spent approximately six hours on this litigation. Doc. 25-9 ¶ 10. Based on this, Plaintiff requests attorneys' fees of $1,500.00. The same counsel has previously been granted that amount in a similar case within this District. *Mortimer*, 2020 WL 3266738, at *4. The Court finds this rate to be reasonable. Likewise, six hours have been found to be a reasonable amount of time to expend on a Communications Act case in which the defendant did not appear. *Mortimer*, 2020 WL 3266738, at *4. Accordingly, the Court will grant the request for $1,500.00 in attorneys' fees.

With respect to costs, Plaintiff's counsel attests that Plaintiff incurred $400.00 in costs for filing the action, and $525.00 in serving Guevara and Latin Bay. Doc. 25-9 ¶ 11. However, nothing in the record indicates that Latin Bay was properly served and Plaintiff dismissed Latin

Bay as a party. Docs. 15, 26-28. Plaintiff does not identify how much of the $525.00 was expended in serving Guevara. Accordingly, the Court denies the request for costs to the extent that Plaintiff requests those costs associated with service. The Court will grant the request for costs associated with filing this action. Accordingly, it is

**ORDERED**:

1. Plaintiff's Motion for Default Judgment (Doc. 25) is **GRANTED-in-part** and **DENIED-in-part**. The motion is **GRANTED** to the extent that it requests a default judgment be entered in favor of Plaintiff Joe Hand Promotions, Inc., and against Defendant Oscar E. Guevara, II for willful violation of 47 U.S.C. § 605. The motion is **DENIED as moot** with respect to Defendant Latin Bay Entertainment LLC.

2. Plaintiff is awarded damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amount of $3,700; enhanced statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) in the amount of $11,100; and attorneys' fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) in the amount of $1,900; for a total damages award of $16,700 against Oscar E. Guevara, II.

3. The Clerk is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** in Tampa, Florida on June18, 2020.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any